2014-1188

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

GPX INTERNATIONAL TIRE CORPORATION, HEBEI STARBRIGHT TIRE
CO., LTD., TIANJIN UNITED TIRE & RUBBER INTERNATIONAL CO., LTD.,
Plaintiffs–Appellants,

MINISTRY OF COMMERCE, PEOPLE'S REPUBLIC OF CHINA,
Plaintiff,

v.

UNITED STATES,
Defendant–Appellee,

BRIDGESTONE AMERICAS, INC.,
BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC,
Defendants,

TITAN TIRE CORPORATION, UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND
SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC,
Defendants–Appellees.

Appeal from the United States Court of International Trade in
consolidated case no. 08-CV-0285, Judge Jane A. Restani.

### RESPONSE BRIEF OF TITAN TIRE CORPORATION AND THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC ("USW")

Terence P. Stewart
Elizabeth J. Drake
Patrick J. McDonough
STEWART AND STEWART
2100 M Street, NW, Suite 200
Washington, DC 20037
(202) 785-4185
edrake@stewartlaw.com

*Attorneys for Defendants-Appellees
Titan Tire Corp. and USW.*

July 14, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*GPX Int'l Tire Corp.*　　　　v.　　　　*United States*

No. **2014-1188**

## CERTIFICATE OF INTEREST

Counsel for the defendants-appellees **Titan Tire Corp. and United Steelworkers** certifies the following:

1.　　The full name of every party or amicus represented by me is:

*Titan Tire Corp. and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC (USW)*

2.　　The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

*Not applicable.*

3.　　All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

*Titan Tire Corporation is owned by Titan Investment Corporation. Titan Investment Corporation is owned by Titan International, Inc. Titan International, Inc. is listed on the New York Stock Exchange.*
*USW has no parent corporations, subsidiaries, or affiliates that have issued shares to the public.*

4. □　There is no such corporation as listed in paragraph 3.

5.　　The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

*Stewart and Stewart: Terence P. Stewart, Wesley K. Caine, William A. Fennell, Geert De Prest, Eric P. Salonen, Elizabeth J. Drake (partners); Amy S. Dwyer, Lane S. Hurewitz, Patrick J. McDonough (of counsel); Nazakhtar Nikakhtar, Philip A. Butler, Elizabeth A. Argenti, Jumana Madanat Misleh, Ping Gong (associates)*

| | |
|---|---|
| **July 14, 2014** | */s/ Elizabeth J. Drake* |
| Date | Signature of counsel |
| | **Elizabeth J. Drake** |
| | Printed name of counsel |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF THE ISSUES..............................................................2

STATEMENT OF THE CASE...................................................................3

STATEMENT OF THE FACTS ...............................................................4

SUMMARY OF THE ARGUMENT .......................................................6

ARGUMENT ............................................................................................9

I.    SECTION 1(A) OF THE 2012 ACT, WHICH EXPRESSLY APPLIES
      CVD LAW TO NMES, DOES NOT IMPLICATE CONSTITUTIONAL
      CONCERNS ABOUT RETROACTIVE APPLICATION BECAUSE IT DID
      NOT SUBSTANTIVELY CHANGE CVD LAW BUT MERELY
      CLARIFIED AND CONFIRMED ITS EXISTING SCOPE ........................10

      A.    Because The Mandate For *GPX I* Never Issued, *GPX I*
            Was Not The Law When The 2012 Act Was Enacted........................12

      B.    Because *GPX I* Was Not The Law When The 2012 Act
            Was Enacted, Section 1 Of The 2012 Act Merely
            Clarified, Rather Than Changed, The Law ........................................19

II.   THE 2012 ACT IS A REMEDIAL STATUTE THAT ONLY AFFECTS
      ENTRIES UPON LIQUIDATION, AND IT IS THUS NOT
      "RETROACTIVE" IN THE CONSTITUTIONAL SENSE...........................32

III.  EVEN ASSUMING, ARGUENDO, THE 2012 ACT RETROACTIVELY
      CHANGED THE CVD LAW, IT DOES NOT VIOLATE THE DUE
      PROCESS CLAUSE.............................................................................35

      A.    Rational-Basis Scrutiny Applies To Due Process Challenges .................. 35

      B.    The 2012 Act Is Supported By A Legitimate Legislative
            Purpose.......................................................................... 36

i

C.     GPX Fails To Demonstrate Any Protected Interest ................................... 40

D.     GPX's Other Due Process Arguments Fail ................................................ 43

IV.   EVEN ASSUMING, ARGUENDO, THE 2012 ACT RETROACTIVELY
CHANGED THE CVD LAW, IT DOES NOT VIOLATE THE EX POST
FACTO CLAUSE .............................................................................................47

A.     The 2012 Act Is Civil, Remedial Legislation, Not Penal,
Punitive, Or Criminal In Nature ...........................................................48

B.     GPX Fails To Show That The 2012 Act Meets The *Smith*
Standard For A Punitive Civil Law .......................................................50

V.    EVEN IF THIS COURT SHOULD FIND THE 2012 ACT
IMPERMISSIBLY RETROACTIVE, IT SHOULD NOT TERMINATE THE
SUBJECT CVD ORDER ..................................................................................55

CONCLUSION ......................................................................................................57

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION

Article I, Section 9, Clause 3 (Ex Post Facto Clause) ......................................*passim*

Fifth Amendment (Due Process Clause) .........................................................*passim*

## CASES

*A Classic Time* v. *United States,*
    123 F.3d 1475 (Fed. Cir. 1997) ....................................................................41

*ABKCO Music, Inc. v. LaVere*,
    217 F.3d 684 (9th Cir. 2000) ..................................................................22, 24

*Alphin v. Henson,*
    552 F.2d 1033 (4th Cir. 1977) .....................................................................15

*American Mfrs. Mut. Ins. Co.* v. *Sullivan,*
    526 U.S. 40 (1999) ......................................................................................40

*Baker v. GTE North Inc.,*
    110 F.3d 28 (7th Cir. 1997) .........................................................................15

*Bethlehem Steel Corp. v. United States,*
    27 F. Supp. 2d 201 (Ct. Int'l Trade 1998) ....................................................42

*Beverly Community Hosp. Ass'n* v. *Belshe,*
    132 F.3d 1259 (9th Cir. 1997) ................................................................21, 24

*Bouie* v. *City of Columbia,*
    378 U.S. 347 (1964)......................................................................................48

*Brown v. Marquette Sav. and Loan Ass'n*,
    686 F.2d 608 (7th Cir. 1982) ..................................................................23, 24

*Brown* v. *Thompson,*
    374 F.3d 253 (4th Cir. 2004) ..........................................................20, 21, 25

*Bryant v. Ford Motor Co.,*
    886 F.2d 1526 (9th Cir. 1989) .....................................................................15

*Calder* v. *Bull,*
    3 U.S. 386 (1798)..........................................................................................48

*Callejas v. McMahon*,
750 F.2d 729 (9th Cir. 1984) ...................................................23, 24

*Carver v. Lehman*,
558 F.3d 869 (9th Cir. 2009) ............................................... 16-17

*Chaparral Steel Company v. United States*,
901 F.2d 1097 (Fed. Cir. 1990) ............................................. 48-49

*Chevron U.S.A. v. Natural Resources Def. Council*,
467 U.S. 837 (1984).............................................................22, 23

*Comer v. Murphy Oil USA, Inc.*,
718 F.3d 460 (5th Cir. 2013) ......................................................15

*Commonwealth Edison Co. v. United States*,
271 F.3d 1327 (Fed. Cir. 2001) (en banc) ....................................36

*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*,
447 U.S. 102 (1980)...................................................................25

*Cookeville Reg'l Med. Ctr. v. Leavitt*,
531 F.3d 844 (D.C. Cir. 2008).....................................................21

*D & L Supply Co. v. United States*,
841 F. Supp. 1312 (Ct. Int'l Trade 1993) ......................................42

*Flemming v. Nestor*,
363 U.S. 603(1960).....................................................................48

*General Motors Corp. v. Romein*,
503 U.S. 181, 191 (1992) ...........................................................38

*Georgetown Steel Corp. v. United States*,
801 F.2d 1308 (Fed. Cir. 1986) ............................................23, 30

*GPX Intern. Tire Corp. v. United States*,
666 F.3d 732 (Fed. Cir. 2011) ("*GPX I*")...............................*passim*

*GPX Intern. Tire Corp. v. United States*,
678 F.3d 1308 (Fed. Cir. 2012) ("*GPX II*") ...........................*passim*

*GPX Intern. Tire Corp. v. United States*,
893 F. Supp. 2d 1296 (Ct. Int'l Trade 2013) ("*GPX III*")....................*passim*

*GPX Intern. Tire Corp. v. United States*,
942 F. Supp. 2d 1343 (Ct. Int'l Trade 2013) ..................................3

*Guangdong Wireking Housewares & Hardware v. United States*,
745 F.3d 1194 (Fed. Cir. 2014) ............................................*passim*

iv

*Huaiyin Foreign Trade Corp. v. United States,*
    322 F.3d 1369 (Fed.Cir.2003) ....................................................50

*Hudson v. United States,*
    522 U.S. 93 (1997)....................................................................51

*Key Enterprises of Delaware, Inc. v. Venice Hosp.,*
    9 F.3d 893 (11th Cir. 1993) .......................................................16

*Landgraf v. USI Film Products,*
    511 U.S. 244 (1994)............................................................ 33-34

*Levy v. Sterling Holding Co., LLC,*
    544 F.3d 493 (3d Cir. 2008) .....................................................20

*Liquilux Gas Corp. v. Martin Gas Sales,*
    979 F.2d 887 (1st Cir.1992).........................................20, 22, 24

*NationsBank of Texas, NA. v. United States,*
    269 F.3d 1332 (Fed. Cir. 2001) ..............................................9, 48

*Newport News Shipbuilding & Dry Dock Co. v. EEOC,*
    462 U.S. 669 (1983)............................................................13, 14

*North American Foreign Trading Corp. v. United States,*
    783 F.2d 1031 (Fed. Cir. 1986) .................................................41

*Norwegian Nitrogen Products Co.* v. *United States,*
    288 U.S. 294 (1933)..........................................................41, 42

*NTN Bearing Corp.* v. *United States,*
    74 F.3d 1204 (1995) .................................................................49

*N.Y. Cent. R.R. Co. v. White,*
    243 U.S. 188 (1917)............................................................... 41

*Parkdale International v. United States,*
    475 F.3d 1375 (Fed. Cir. 2007) .........................................*passim*

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.,*
    467 U.S. 717 (1984)........................................................ 36, 40-41

*Piamba Cortes v. Am. Airlines, Inc.,*
    177 F.3d 1272 (11th Cir.1999) .........................................*passim*

*Plaut v. Spendthrift Farm, Inc.,*
    514 U.S. 211 (1995).................................................................14

*Red Lion Broadcasting Co. v. FCC,*
    395 U.S. 367 (1969).................................................................20

*Sanders v. Allison Engine Co., Inc.*,
703 F.3d 930 (6th Cir. 2012) .........................................................38

*SKF USA, Inc. v. United States*,
512 F.3d 1326 (Fed. Cir. 2008) ....................................................32

*SKF USA, Inc.* v. *United States*,
556 F.3d 1337 (Fed. Cir. 2009) ....................................................44

*Smith v. Doe*,
538 U.S. 84 (2003).............................................................. 50, 51-52

*Travenol Laboratories, Inc. v. United States*,
118 F.3d 749 (Fed. Cir. 1997) ......................................................41

*United States v. Carlton*,
512 U.S. 26 (1994) ........................................................... 41, 43-44

*United States v. Heinszen & Co.*,
206 U.S. 370 (1907)................................................................ 39-40

*United States v. Klein*,
80 U.S. 128 (1871)........................................................................14

*United States v. Maciel-Alcala*,
612 F.3d 1092 (9th Cir. 2010) .....................................................25

*United States v. Montgomery County*,
761 F.2d 998 (4th Cir. 1985) .......................................................23

*Usery v. Turner Elkhorn Mining Co.*,
428 U.S. 1 (1976) ...............................................................9, 36, 41

*Wheeler v. United States*,
768 F.2d 1333 (Fed. Cir. 1985) ......................................................9

## **STATUTES**

Pub. L. No. 112-99, 126 Stat. 265 (2012) ("2012 Act"), entitled
"An Act to Apply the Countervailing Duty Provisions of the
Tariff Act of 1930 to Nonmarket Economy Countries, and
for other Purposes," enacted on March 13, 2012, and
codified at 19 U.S.C. §§ 1671, 1677f-1.................................*passim*

19 U.S.C. § 1671 ...............................................................................3

19 U.S.C. § 1677f-1 ..........................................................................3

19 U.S.C. § 1671b(d)(1)(B) ......................................................45

19 U.S.C. § 1671b(d)(2) ...........................................................45

19 U.S.C. § 1677a(c)(1)(C) ......................................................53

19 U.S.C. § 3533(g)(2)..............................................................53

19 U.S.C. § 3538(c) ...................................................................53

## FEDERAL REGULATIONS

19 C.F.R. § 16.24(f) (1960) .....................................................31

19 C.F.R. § 16.24(f) (1970) .....................................................31

## ADMINISTRATIVE DETERMINATIONS

*Certain New Pneumatic Off-the-Road Tires from the People's
    Republic of China*, 72 Fed. Reg. 71360 (Dec. 17, 2007)
    (prelim. affirm. CVD determ)............................................45

*Certain New Pneumatic Off-The-Road Tires from the People's
    Republic of China: Final Affirmative Determination of Sales
    at Less Than Fair Value and Partial Affirmative
    Determination of Critical Circumstances*, 73 Fed. Reg.
    40485 (Dep't Comm. July 15, 2008) and accompanying
    Issues and Decision Memorandum at Comment 2 ........................53

*Certain New Pneumatic Off-the-Road Tires from the People's
    Republic of China: Countervailing Duty Order*, 73 Fed. Reg.
    51627 (Dep't Comm. Sept. 4, 2008) ....................................5

*Coated Free Sheet Paper from the People's Republic of China:
    Final Affirmative Countervailing Duty Determination*, 72
    Fed. Reg. 60645 (Dep't Comm. Oct. 25, 2007) ..........................5

*Countervailing Duties; Cordage from Cuba*, T.D. 53534 (July 19,
    1954) ..............................................................30

*Cordage from Cuba; Final Results of Administrative Review of
    Countervailing Duty Order*, 47 Fed. Reg. 33526 (Dep't
    Comm. Aug. 3, 1982) ...............................................31

*Cordage from Cuba; Final Results of Administrative Review of Countervailing Duty Order*, 48 Fed. Reg. 39109 (Dep't Comm. Aug. 29, 1983) ...............................................................31

*Cordage from Cuba; Final Results of Administrative Review and Revocation of Countervailing Duty Order*, 49 Fed. Reg. 39888 (Dep't Comm. Oct. 11, 1984)............................................................30

## RULES

Federal Rules of Appellate Procedure

FRAP 35(a) ................................................................12, 32

FRAP 35(b) ...............................................................12, 32

Federal Circuit Rules

FCR 35(a)...................................................................12, 32

FCR 35 (b) .................................................................12, 32

## INTERNATIONAL MATERIALS

General Agreement on Tariffs and Trade 1994 (GATT 1994), 1867 U.N.T.S. 187, Art. VI:5 ..................................................53

## OTHER

Letter to Senator Max Baucus, Chairman of the Senate Finance Committee, by the Secretary of Commerce, John Bryson, and the U.S. Trade Representative, Ambassador Ron Kirk (January 18, 2012) .......................................................30

158 Cong. Rec. H1167-1173 (March 6, 2012) .................................................. 26-29

Memorandum, *Countervailing Duty Investigation of Coated Free Sheet Paper from the People's Republic of China - Whether the Analytical Elements of the* Georgetown Steel *Opinion are Applicable to China's Present Day Economy* (Dep't Comm. Mar. 29, 2007) ("*Georgetown Steel Memorandum*").............*passim*

*Application of the Countervailing Duty Law to Imports from the People's Republic of China; Request for Comment*, 71 Fed. Reg. 75507 (Dep't Comm. Dec. 15, 2006)....................................................45

*Implementation of Determinations Under Section 129 of the Uruguay Round Agreements Act: Certain New Pneumatic Off-the-Road Tires; Circular Welded Carbon Quality Steel Pipe; Laminated Woven Sacks; and Light-Walled Rectangular Pipe and Tube From the People's Republic of China*, 77 Fed. Reg. 52683 (Dep't Comm. Aug. 30, 2012) .........................55

## STATEMENT OF RELATED CASES

**Federal Circuit Rule 47.5(a):** **Whether any other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court?**

| | |
|---|---|
| Title/No.: | *GPX International Tire Corporation v. United States*, Appeal Nos. 2011-1107, 2011-1108, 2011-1109. |
| Decided: | December 19, 2011. |
| Panel: | RADER, Chief Judge, LINN and DYK, Circuit Judges. |
| Citation: | 666 F.3d 732 (2011). |

| | |
|---|---|
| Title/No.: | *GPX International Tire Corporation v. United States*, Appeal Nos. 2011-1107, 2011-1108, 2011-1109. |
| Decided: | May 9, 2012. |
| Panel: | RADER, Chief Judge, LINN and DYK, Circuit Judges. |
| Citation: | 678 F.3d 1308 (2012). |

**Federal Circuit Rule 47.5(b):** **The title and number of any case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal. If there are many related cases, they may be described generally, but the title and case number must be given for any case known to be pending in the Supreme Court, this court, or any other circuit court of appeals.**

We are aware of several cases before the United States Court of

International Trade that may be affected by the Court's disposition of this appeal.

Those cases are as follows:

- *TMK IPSCO v. United States*, Consol. Court No. 10-CV-00055
- *RHI Refractories Liaoning Co. Ltd. v. United States*, Consol. Court No. 10-CV-00307
- *United States Steel Corp. v. United States*, Consol. Court No. 10-CV-00363
- *United States Steel Corp. v. United States*, Consol. Court No. 10-CV-00364

- *Gold East Paper (Jiangsu) Co., Ltd v. United States*, Court No. 10-CV-00372

- *Downhole Pipe & Equipment, LP v. United States*, Court No. 11-CV-00082

- *GPX Int'l Tire Corp. v. United States*, Court. No. 11-CV-00129

- *Lumber Liquidators Services, LLC v. United States*, Consol. Court No. 12-CV-00011

- *Changhzhou Trina Solar Energy Co., Ltd. v. United States*, Consol. Court No. 13-CV-00009

- *Titan Wind Energy (Suzhou) Co., Ltd. v. United States*, Court No. 13-CV-00106


# STATEMENT OF THE ISSUES

1. Whether section 1 of Pub. L. No. 112-99, 126 Stat. 265 (2012) ("2012 Act") merely clarified, and did not change, the existing scope of U.S. countervailing duty law and thus implicates no constitutional concerns.

2. Whether section 1 of the 2012 Act is a remedial statute that only affects entries upon liquidation and is thus not retroactive in the constitutional sense.

3. Whether section 1(b) of the 2012 Act, assuming *arguendo* it is retroactive, violates the Due Process Clause of the Fifth Amendment to the United States Constitution where that provision is supported by a rational legislative purpose.

4. Whether section 1(b) of the 2012 Act, assuming *arguendo* it is retroactive, violates the Ex Post Facto Clause of Article I, section 9, clause 3 of the United States Constitution where the 2012 Act is civil, remedial legislation and is not penal, punitive, or criminal in nature.

## STATEMENT OF THE CASE

This appeal concerns the constitutionality under the Due Process Clause and Ex Post Facto Clause of the U.S. Constitution of Pub. L. No. 112-99, 126 Stat. 265 (2012) ("2012 Act"); JA 62-64. This law was entitled "An Act to Apply the Countervailing Duty Provisions of the Tariff Act of 1930 to Nonmarket Economy Countries, and for other Purposes," enacted on March 13, 2012, and codified at 19 U.S.C. §§ 1671, 1677f-1. This legislation clarifies and confirms the authority of the U.S. Department of Commerce ("Commerce") to apply the countervailing duty ("CVD") law to nonmarket economy countries.

Plaintiffs-appellants, GPX International Tire Corporation, Hebei Starbright Tire Co., Ltd., and Tianjin United Tire & Rubber International Co., Ltd., appeal the final judgment of the United States Court of International Trade holding that the 2012 Act is constitutional and does not violate either the Due Process Clause or Ex Post Facto Clause of the U.S. Constitution, as reflected in *GPX Intern. Tire Corp. v. United States*, 893 F. Supp. 2d 1296 (Ct. Int'l Trade 2013) ("*GPX III*") (JA 21-64) and *GPX Intern. Tire Corp. v. United States*, 942 F. Supp. 2d 1343 (Ct. Int'l Trade 2013) (JA 1-20).

3

## STATEMENT OF THE FACTS

GPX's brief sets out background facts regarding the underlying CVD and antidumping ("AD") investigations, the initial appeal to the Trade Court, this Court's decision in *GPX Intern. Tire Corp. v. United States*, 666 F.3d 732 (Fed. Cir. 2011) ("*GPX I*"), enactment of the 2012 Act, this Court's rehearing decision in *GPX Intern. Tire Corp. v. United States*, 678 F.3d 1308 (Fed. Cir. 2012) ("*GPX II*"), and the Trade Court's decision holding that the 2012 Act is constitutional in *GPX Intern. Tire Corp. v. United States*, 893 F. Supp. 2d 1296 (Ct. Int'l Trade 2013) ("*GPX III*").

We provide the following additional facts not identified in GPX's brief.

- On November 20, 2006, Commerce initiated a CVD investigation of *Coated Free Sheet Paper from the People's Republic of China.* In that investigation, on March 29, 2007, Commerce issued a memorandum which extensively analyzed economic reforms in China and explained that, as a result, it was now possible for Commerce to identify and measure subsidies in China sufficiently to apply the CVD law. *See* Memorandum, *Countervailing Duty Investigation of Coated Free Sheet Paper from the People's Republic of China - Whether the Analytical Elements of the* Georgetown Steel *Opinion are Applicable to China's Present Day Economy* (Dep't Comm. Mar. 29, 2007) ("*Georgetown Steel Memorandum*"); JA 153-163. The clarification in the 2012 Act regarding

Commerce's ability to apply CVD law to China referred back to the *Coated Paper* investigation in which the *Georgetown Steel Memorandum* was issued.

- Commerce issued the CVD order on off-the-road tires ("OTR Tires") from China on September 4, 2008. *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Countervailing Duty Order*, 73 Fed. Reg. 51627 (Dep't Comm. Sept. 4, 2008).

- Following this Court's *GPX I* decision, and before enactment of the 2012 Act, the United States and the defendants-intervenors filed petitions for rehearing. It was in the context of this rehearing proceeding that the Court sought five-page letter briefs after enactment of the 2012 Act. *See* GPX Brief at 13.

- On March 18, 2014, this Court issued its decision in *Guangdong Wireking Housewares & Hardware v. United States*, 745 F.3d 1194, 1201 (Fed. Cir. 2014) ("*Wireking*"), in which it held that the 2012 Act did not violate the Ex Post Facto Clause of the U.S. Constitution. The mandate in *Wireking* issued on July 10, 2014.

## SUMMARY OF THE ARGUMENT

The 2012 Act is constitutional. Appellants' arguments to the contrary depend entirely on the fallacy that section 1 of the 2012 Act changed the law. As explained below, this conclusion is not a correct statement of the law, and it directly conflicts with the precedent of the Supreme Court, this Court, and other U.S. Courts of Appeals. The 2012 Act merely clarified, rather than changed, the law, and thus implicates no constitutional concerns. Moreover, as a remedial trade relief statute, the law only affects entries upon liquidation, and it is thus not a retroactive law in the constitutional sense. Finally, even assuming arguendo that the 2012 Act was retroactive, it does not violate either the Due Process Clause or the Ex Post Facto Clause.

As a threshold matter, the 2012 Act implicates no constitutional concerns regarding retroactivity under either the Due Process Clause or the Ex Post Facto Clause. This is because section 1of the 2012 Act did not change the law, but merely clarified what the CVD law had been. In *GPX I*, this Court held that the CVD law was inapplicable to non-market economy countries ("NMEs"). Because no mandate ever issued on *GPX I*, that holding never became final. Thus, *GPX I* is not now, and never was, a binding statement of the law. U.S. Courts of Appeals in at least seven other circuits have found that when Congress passes an amendment to overrule a non-final court decision that contradicts Congress' own

6

understanding of the law, the amendment is a clarification, not a change, and no constitutional retroactivity concerns are implicated.  This Court, in *GPX II*, similarly found that the 2012 Act was not impermissibly retroactive under a separation of powers analysis, because *GPX I* never became final.  The lack of finality of *GPX I* requires the conclusion that the 2012 Act is also not impermissibly retroactive under the Due Process and Ex Post Facto Clauses.[1]

Moreover, the 2012 Act is a remedial trade relief statute that only affects entries upon liquidation.  The Supreme Court has explained that remedial statutes, which provide relief based on events preceding the law's enactment, are not impermissibly retroactive under the Due Process Clause.  In addition, this Court has treated liquidation, not entry, as the operative event for the purposes of determining whether a new law is retroactive as to imported entries.  As this Court only has jurisdiction over unliquidated entries, as a matter of law the 2012 Act cannot be retroactive as to appellants.

---

[1]  In *Wireking*, the Court stated that the 2012 Act was a change, not a mere clarification, of the law.  These statements were not necessary to the holding in *Wireking* and should be treated as *dicta*.  If this Court determines that these statements regarding change and clarification in *Wireking* are precedential, it should refer the issue to a hearing en banc in order to overrule those statements so as to avoid creating a conflict with Supreme Court precedent, with this Court's holding in *GPX II*, and with the authoritative decisions of other U.S. Courts of Appeals.

Assuming, *arguendo*, that the 2012 Act is retroactive, it does not violate the Due Process Clause.  A statute satisfies due process concerns as long as the law's retroactive application is justified by a rational legislative purpose.  Here, Congress had the legitimate purpose of correcting this Court's decision in *GPX I* and preserving the original scope of the law as it had been applied to injurious and unfairly traded imports from China.  Even if Commerce were not authorized to apply the CVD law to imports from China prior to the 2012 Act, the Supreme Court has found that Congress may retroactively authorize such action through curative legislation without violating due process.  Finally, GPX has failed to demonstrate that it had any protected interest of which it was deprived by the 2012 Act or that it lacked adequate notice that the CVD law may apply.  For all of these reasons, GPX's due process arguments must fail.

Assuming, *arguendo*, that the 2012 Act is retroactive, it also does not violate the Ex Post Facto Clause.  As this Court found in *Wireking*, the 2012 Act is civil, not penal, punitive, or criminal in nature, and thus the Ex Post Facto Clause does not apply.  None of the seven factors warranting exception from this rule are met in this case.  GPX claims that the application of the CVD law to OTR Tires, without adjustments for double counting made available only prospectively under the 2012 Act, renders the application of CVDs excessive and punitive.  This Court rightly rejected these claims in *Wireking*.  There is even less merit to the argument in this

case, as Commerce has in fact analyzed the issue of double counting with respect to the OTR Tires investigations and provided adjustments where warranted.

For all of these reasons, this Court should affirm the Trade Court and find the 2012 Act to be constitutional.

If the Court should nonetheless find that section 1(b) of the 2012 Act is unconstitutional, it should not terminate the subject CVD order, as the question of whether the order is permissible under the law prior to the 2012 Act is a question of renewed first impression given that the non-final decision *GPX I* has been overruled.

## ARGUMENT

"The determination of the constitutionality of a statute is a question of law, which this court reviews without deference." *NationsBank of Texas, NA. v. United States,* 269 F.3d 1332, 1335 (Fed. Cir. 2001); *see also Wireking,* 745 F.3d at 1200 ("We review the Trade Court's decision of the constitutional question de novo."). It is "well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15 (1976). "The presumption of constitutionality is extremely difficult to overcome." *Wheeler v. United States,* 768 F.2d 1333, 1337 (Fed. Cir. 1985).

I.  **SECTION 1(A) OF THE 2012 ACT, WHICH EXPRESSLY APPLIES CVD LAW TO NMES, DOES NOT IMPLICATE CONSTITUTIONAL CONCERNS ABOUT RETROACTIVE APPLICATION BECAUSE IT DID NOT SUBSTANTIVELY CHANGE CVD LAW BUT MERELY CLARIFIED AND CONFIRMED ITS EXISTING SCOPE**

GPX argues that in enacting section 1 of the 2012 Act Congress intended to change the CVD law, not to clarify it, and thus retroactive application of the 2012 Act violates both the Due Process and Ex Post Facto Clauses of the U.S. Constitution. *See, e.g.,* GPX Brief at 15. Specifically, GPX contends that this Court's decision in *GPX I*, which found that the CVD law cannot be applied to NMEs, was the law in effect at the time the Act was enacted. GPX Brief at 18. GPX is wrong. *GPX I* was not binding legal precedent at the time the 2012 Act was enacted, because no mandate had yet issued to render that decision final. Thus, the 2012 Act clarified and confirmed CVD law, rather than changed it substantively, and application of the Act's provisions to the OTR Tires investigation does not implicate constitutional concerns.

The Trade Court below assumed, *arguendo*, that section 1 effected a retroactive change in the law so that it could address the constitutional issues remanded to it. *GPX III,* 893 F. Supp. 2d at 1309. Therefore, the Trade Court did not definitively rule whether the 2012 Act constituted a change or merely a clarification.

This Court, in *Wireking*, concluded that the 2012 Act "operates retroactively." 745 F.3d at 1202. This was based on three premises: (1) the 2012 Act, though it overturned *GPX I*, "does not nullify this court's reasoning and conclusion in *GPX I*;" (2) *GPX I*, though not a final decision, "stands as a statement of the law at the time of its decision;" and (3) *GPX I* "reflects the correct interpretation of the Tariff Act at the time of the decision." *Wireking*, 745 F.3d at 1201-02.[2]

These statements are not necessary to the decision in *Wireking*, because the Court ultimately found the 2012 Act did not violate the Ex Post Facto Clause even if it was retroactive. Thus, the statements regarding retroactivity should be treated as *dicta*. The Court should therefore consider the arguments set forth below and determine *GPX I* was never made a final and binding statement of law, the 2012 Act is in fact a clarification and not a change, and, thus, the Act implicates no constitutional concerns.

---

[2] Judge O'Malley concurred with the result in *Wireking*, but disagreed that the 2012 Act necessarily effected a change, rather than clarification, of the law:

> Because Congress could and did prevent *GPX I* from ever becoming a final judgment, I cannot agree with the majority that *GPX I* "still stands as a statement of the law at the time of its decision." …. *GPX I* never became a judgment of this Court and should not be treated as if it did. The fact that we did not vacate the opinion does not give that opinion the force of law or make it precedential.

*Wireking*, 745 F.3d at 1210 (O'Malley, concurring) (internal citations omitted).

If this Court determines the statements regarding retroactivity in *Wireking* are precedential, we respectfully request the Court refer the question of whether the Act constitutes a clarification or change to a hearing en banc in order to overrule that precedent in this case.[3]  Only the Court en banc may overrule a precedent. F.C.R. 35(a)(1).  In addition, the question of whether the 2012 Act changed, or merely clarified, existing law is a question of exceptional importance that sets important precedent for this Court.  If this Court were to determine *GPX I* was a binding statement of the law and the 2012 Act did indeed change the law, it would conflict with decisions of the United States Supreme Court, this Court's own precedent, and authoritative decisions of other U.S. Courts of Appeals.  The issue is thus one of exceptional importance warranting hearing en banc.  F.R.A.P. 35(a) and (b); F.C.R. 35(a) and (b).

**A.  Because The Mandate For *GPX I* Never Issued, *GPX I* Was Not The Law When The 2012 Act Was Enacted**

As noted above, the Court in *Wireking* determined that the 2012 Act changed the law retroactively based on its conclusion that the Court's opinion in *GPX I* was the statement of the law at the time of enactment and the Act did not nullify the reasoning and conclusion in *GPX I*.  *Wireking*, 745 F.3d at 1201-02.

---

[3]  The submission of this request in appellee's brief, rather than through a Petition for Hearing En Banc, is permitted under F.C.R. 35(a)(1).

The Court acknowledged that the mandate finalizing *GPX I* had not yet issued when the 2012 Act was enacted. *Id.* at 1201. It is undisputed that an appellate court's opinion is not final until the mandate issues. *Id.* The question is whether, when Congress overrules a court's opinion prior to the issuance of the mandate, that prior decision ever had, or continues to have, any legal effect. The Court in *Wireking* concluded that it did. This conclusion conflicts with the precedent of the Supreme Court, this Court, and other U.S. Courts of Appeals.

The Supreme Court has explained that when Congress overrules a Court decision, and when a bill's proponents repeatedly emphasize that the decision to be overruled "erroneously interpreted congressional intent and that amending legislation was necessary to reestablish the principles of [the statute] as they had been understood prior to the [court] decision," that legislative amendment should be treated as "disapproval of both the holding and the reasoning of the Court." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678-679 (1983). As a result of such congressional action, not only is the overruled decision not binding precedent, but its reasoning is also unpersuasive in future cases. *Id.* That is precisely what Congress did here. As explained in more detail below, the 2012 Act overruled *GPX I*. More specifically, the bill's proponents repeatedly emphasized that *GPX I* erroneously interpreted congressional intent, and the bill's proponents emphasized that the amendment was necessary to reestablish principles

13

of the law as they should have been understood prior to *GPX I*. *See infra*. Thus, consistent with *Newport News*, this Court should find that Congress disapproved of both the holding and reasoning of *GPX I*. The statement in *Wireking* that Congress did not nullify the Court's reasoning and conclusion in *GPX I*, *Wireking*, 745 F.3d at 1201, conflicts with this binding Supreme Court precedent and is thus incorrect.

To justify its conclusion that the 2012 Act did not "nullify" *GPX I*, the Court in *Wireking* stated that enactment of a law nullifying *GPX I* would amount to Congress impermissibly prescribing a rule of decision to the Judicial Department. *Wireking*, 745 F.3d at 1201, citing *United States v. Klein*, 80 U.S. 128, 146 (1871). But Congress may clarify what the law is and always was without impermissibly prescribing a rule of decision. As explained by the Supreme Court, decisions since *Klein*, "have made clear that its prohibition does not take hold when Congress amends applicable law." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) (internal quotation marks, brackets, and citations omitted).[4]

Here, Congress amended applicable law, and the Court, in *GPX II*, applied that amended law as the law of the case, noting that Congress had overruled the non-final decision in *GPX I*. *GPX II*, 678 F.3d at 1311. Indeed, in *GPX II*, this

---

[4]  In *Plaut*, the Court found the law at issue was unconstitutional, because it retroactively commanded courts to reopen final judgments. *Plaut*, 514 U.S. at 219. That is not the case with the 2012 Act, because *GPX I* was not final at the time of enactment.

14

Court explicitly rejected the argument that the 2012 Act attempted to prescribe a rule of decision, noting, "no issue is raised by the fact that our decision in *GPX* [*I*] had issued prior to enactment of the new legislation because this case remained pending on appeal." *Id*. at 1312. Thus, the 2012 Act need not be characterized as an impermissible prescription of a rule of decision to find that it merely clarified, rather than changed, the law.

Appellate court decisions from other circuits confirm these principles. When there is a prior opinion on which no mandate has issued, and the outcome is subsequently changed on rehearing or otherwise, that prior decision not only has no legal effect, it never had any legal effect. This is the case whether or not the prior decision is formally vacated or simply treated as being revised or amended on rehearing.[5]

---

[5]  In some circuits, the Court of Appeals may vacate prior, non-final decisions in response to intervening legislation. *See, e.g.*, *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528, 1534 (9th Cir. 1989). Other circuits consider a panel decision to automatically be vacated once rehearing en banc is granted. *See, e.g.*, *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 468 (5th Cir. 2013). In other circuits, Courts of Appeals do not formally vacate a prior non-binding decision, but explain that their subsequent decisions on rehearing "amend," "revise," or "reconsider" the prior determination. *See, e.g.*, *Baker v. GTE North Inc.*, 110 F.3d 28, 30 (7th Cir. 1997); *Alphin v. Henson*, 552 F.2d 1033, 1035 (4th Cir. 1977). Because the prior decision had no finality, it is not necessary to vacate it in order for it to have no legal effect. Thus, whether this Court formally vacated *GPX I* is irrelevant.

The Eleventh Circuit has explained that a panel opinion without a mandate is inoperative and does not constitute the law of the case:

> During the stay of the panel's mandate and our consideration of the Petition for Rehearing, <u>the panel's decision was inoperative</u>, in that it did not fix liability against any appellee. Pending issuance of the mandate, the district court's judgment for the appellees remained intact. Moreover, <u>because the panel's mandate had not issued, the panel's decision was never the "law of the case."</u> And … once we have granted rehearing en banc, our precedent precludes the reinstatement of a panel opinion unless we reach the merits and conclude that the panel correctly stated the law.

*Key Enterprises of Delaware, Inc. v. Venice Hosp.*, 9 F.3d 893, 898 (11th Cir. 1993) (emphasis added). The conclusion in *Wireking* that *GPX I* was the statement of the law at the time it issued, despite the lack of a mandate, *Wireking*, 745 F.3d at 1201-02, directly conflicts with the Eleventh Circuit's holding that an opinion without a mandate was "inoperative" and never constituted the "law of the case."

The Ninth Circuit has similarly determined that a panel opinion on which the mandate had not yet issued was never a binding decision.

> … [W]e respectfully disagree with Judge Reinhardt's contention that the prior majority's opinion actually became a binding construction of the Constitution before Judge Ferguson's death …. <u>No opinion of this circuit becomes final until the mandate issues</u>, and the opinion issued by the prior majority was only part way through its finalization process. Until the mandate has issued, opinions can be, and regularly are, amended or withdrawn, by the merits panel at the request of the parties pursuant to a petition for panel rehearing, in

16

> response to an internal memorandum from another
> member of the court who believes that some part of the
> published opinion is in error, or *sua sponte* by the panel
> itself …. Thus, the prior majority's holding in this case
> may or may not have survived until the mandate issued,
> but it was certainly not yet enshrined as a binding
> construction of the Constitution when Judge Ferguson
> died.

*Carver v. Lehman*, 558 F.3d 869, 878-879 (9th Cir. 2009) (footnotes omitted)

(emphasis added).  The conclusion in *Wireking* that *GPX I* was the statement of the

law prior to the issuance of the mandate, *Wireking*, 745 F.3d at 1201-02, directly

conflicts with the Ninth Circuit's holding that an opinion without a mandate cannot

provide a "binding construction" of the law.

Moreover, the statements in *Wireking* that *GPX I* was the law in effect prior

to the enactment of the 2012 Act directly conflict with this Court's own holding in

*GPX II*.  In *GPX II*, the Court first reviewed section 1 of the 2012 Act, and

concluded that "Congress clearly sought to overrule our decision in *GPX* [*I*]."

*GPX II*, 678 F.3d at 1311.  The Court then reviewed section 2 of the 2012 Act,

which allows for adjustments to account for so-called "double counting" on a

prospective basis.  *Id*. at 1311-1312.  By enacting section 2 of the Act, the Court

concluded that "Congress clearly did not view this statutory change [*i.e.*, section 2]

as reflecting a clarification of existing law, but rather as a change in the law." *Id*.

at 1311.  This juxtaposition supports the conclusion that section 1 was viewed as a

clarification, while section 2 was not.  The Court then summarized the cumulative

effect of the two sections of the law: "We conclude that the statute prior to the enactment of the new legislation did not impose a restriction on Commerce's imposition of countervailing duties on goods imported by NME countries to account for double counting." *Id*. at 1312.

The statement in *Wireking* that *GPX I* was the law prior to the 2012 Act, *Wireking*, 745 F.3d at 1201-02, would mean that Commerce had no ability to apply the CVD law to NMEs whatsoever when the 2012 Act was enacted. But the Court held in *GPX II* that the statute in effect prior to the enactment of the 2012 Act did not require Commerce to adjust for double counting when applying the CVD law to NMEs. *GPX II*, 678 F.3d at 1312. That conclusion would be without meaning if *Wireking* is correct, and Commerce was also barred by statute from applying the CVD law to NMEs at all under *GPX I* at the time of the Act's enactment. *Wireking*'s statements regarding the state of the law prior to the enactment of the 2012 Act thus directly conflict with this Court's holding in *GPX II*.[6]

In addition, the conclusion in *Wireking* that the 2012 Act is retroactive for the purposes of the Ex Post Facto Clause directly conflicts with the Court's conclusion in *GPX II* that the 2012 Act is <u>not</u> impermissibly retroactive for the purposes of a separation of powers analysis. The reason the Court concluded that

---

[6] Judge O'Malley also noted this inconsistency with *GPX II*. *Wireking*, 745 F.3d at 1209-1210 (O'Malley, concurring).

18

the 2012 Act did not violate the separation of powers was precisely because "this case was still pending on appeal when Congress enacted the new legislation, as our mandate had not yet issued." *GPX II*, 678 F.3d at 1312. The lack of finality of the *GPX I* decision also logically requires the conclusion that the 2012 Act is not a retroactive change for the purposes of an Ex Post Facto Clause analysis, as well as the Due Process analysis raised in this case.

In sum, *GPX I* never became operative, never became binding law, and was never an authoritative statement of the law, because no mandate issued on the *GPX I* opinion. This conclusion is required by Supreme Court precedent, and it is consistent with the holdings of other U.S. Courts of Appeals and with this Court's own holding in *GPX II*.

**B.    Because *GPX I* Was Not The Law When The 2012 Act Was Enacted, Section 1 Of The 2012 Act Merely Clarified, Rather Than Changed, The Law**

As explained by this Court in *GPX II*, the statute prior to the enactment of the 2012 Act placed no restrictions on Commerce's ability to apply the countervailing duty law to NMEs. *GPX II*, 678 F.3d at 1312. Thus, section 1 of the 2012 Act merely clarified existing CVD law, and the 2012 Act does not raise or implicate any constitutional concerns with respect to retroactivity. "[C]oncerns about retroactive application are not implicated when an amendment … is deemed

19

to clarify relevant law rather than effect a substantive change in the law." *Piamba Cortes v. Am. Airlines, Inc.,* 177 F.3d 1272, 1283 (11th Cir.1999).

"Clarification, effective *ab initio,* is a well recognized principle." *Liquilux Gas Corp. v. Martin Gas Sales,* 979 F.2d 887, 890 (1st Cir.1992), citing *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367 (1969).  It is well-established that Congress may enact legislation to "clarify" existing law without thereby "changing" the law.

> [W]hen an amendment alters, even "significantly alters," the original statutory language, this does "not necessarily" indicate that the amendment institutes a change in the law …. Certainly, Congress may amend a statute to establish new law, but it also may enact an amendment "to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases." …. As we have explained, a "change[] in statutory language need not *ipso facto* constitute a change in meaning or effect. Statutes may be passed purely to make what was intended all along even more unmistakably clear."

*Brown* v. *Thompson,* 374 F.3d 253, 259 (4th Cir. 2004) (citations omitted).

Moreover, the courts have recognized that such legislation does not raise the type of retroactive concerns that implicate constitutional issues.

> [R]etroactivity [is] a non-issue with respect to new laws that clarify existing law.

*Levy v. Sterling Holding Co., LLC,* 544 F.3d 493, 506 (3d Cir. 2008).

> [C]oncerns about retroactive application are not implicated when an amendment ... is deemed to clarify

20

> relevant law rather than effect a substantive change in the law.

*Piamba Cortes,* 177 F.3d at 1283.

> In effect, the court applies the law as set forth in the amendment to the present proceeding because the amendment accurately restates the prior law.

*Id.*

> [T]here is no problem of retroactivity [when the amendment] did not retroactively alter settled law [but] simply clarified an ambiguity in the existing legislation. … In doing so, Congress ratified the Secretary's earlier policies, …, to emphasize that the Secretary always had this discretionary authority.

*Cookeville Reg'l Med. Ctr. v. Leavitt,* 531 F.3d 844, 849 (D.C. Cir. 2008).

> If [the amendment] merely clarifies what [the statute] was originally intended to mean, then …. the only function of [the amendment] in this situation is to state more clearly what the law already was—it has no retroactive effect that might be called into constitutional question.

*Beverly Community Hosp. Ass'n* v. *Belshe,* 132 F.3d 1259, 1265 (9th Cir. 1997).

> Because we find that [the amendments] merely clarified the meaning of [the statute] as it existed before those amendments and thus are not applying [the amendments] retroactively, we need not consider whether such retroactive application would pose any constitutional problems.

*Brown* v. *Thompson,* 374 F.3d at 261 n.6.

When determining whether legislation merely clarifies existing law, an

important factor courts consider is whether a conflict or ambiguity existed

regarding the interpretation of the relevant statute when the amendment was

enacted, and, if so, "courts view this as an indication that a subsequent amendment

is intended to clarify, rather than change, the existing law." *Piamba Cortes,* 177

F.3d at 1283-84.

> A significant [factor] is the fact that the new enactment
> clarifies an ambiguity. *United States v. Montgomery Cty*,
> 761 F.2d 998, 1003 (4th Cir.1985). Especially is this so
> when, as here, the enactment follows fast upon the
> ambiguity's discovery, *Callejas v. McMahon,* 750 F.2d
> 729, 731 (9th Cir.1984), and the legislature affirms the
> agency.

*Liquilux,* 979 F.2d at 890 (citation omitted). Moreover, "[a]n amendment in the

face of an ambiguous statute or a dispute among the courts as to its meaning

indicates that Congress is clarifying, rather than changing, the law." *ABKCO*

*Music, Inc. v. LaVere*, 217 F.3d 684, 691 (9th Cir. 2000) (citation omitted).

The use of the word "ambiguity" does not limit application of this principle

to situations in which the statute that is the subject of the clarifying amendment has

been found "ambiguous" as a matter of law under *Chevron U.S.A. v. Natural*

*Resources Def. Council*, 467 U.S. 837 (1984). The principle also applies in

situations of "conflict," *Piamba Cortes*, 177 F.3d at 1283, and "dispute," *ABKCO*

*Music Inc.*, 217 F.3d at 691, as to the correct interpretation of the underlying

statute.  As the Seventh Circuit explained:  "One method of interpreting the significance of subsequent amendments to a statute takes dispute or ambiguity, such as a split in the circuits, to be an indication that a subsequent amendment is intended to clarify, rather than change, the existing law."  *Brown v. Marquette Sav. And Loan Ass'n*, 686 F.2d 608, 615 (7th Cir. 1982) (citation omitted).  *Accord Callejas v. McMahon*, 750 F.2d 729, 731 (9th Cir. 1984).

Another situation in which such a "conflict" arises is when a court's interpretation of a statute contradicts an agency's and/or the legislature's own understanding of that statute.  None of the parties need find the statute ambiguous in the *Chevron* sense; their conclusions as to the plain meaning of the law may simply differ.  The existence of such a conflict prior to an amendment leads courts to conclude that the amendment is a clarification of the law, rather than a change.  *See*, *e.g.*, *United States v. Montgomery County*, 761 F.2d 998, 1003 (4th Cir. 1985).

This factor is met in this case.  Commerce determined the CVD statute could apply to imports from China as long as subsidies could be identified and measured.  On appeal, this Court concluded the CVD statute could not apply due to its interpretation of congressional action and inaction since the Court's earlier decision affirming Commerce's ability to decline to apply the CVD law to NMEs in *Georgetown Steel Corp. v. United States*, 801 F.2d 1308 (Fed. Cir. 1986).  *GPX I*, 666 F.3d at 739.  Thus, at the time the 2012 Act was enacted, a "conflict" and a

23

"dispute" had arisen between the agency and this Court with respect to the proper

interpretation of the statute. Congress acted quickly to respond to the situation, re-

affirm the agency, and resolve the conflict. Thus, the 2012 Act "follow[ed] fast

upon the … discovery" of the conflict, and the 2012 Act "affirm[ed] the agency."

*Liquilux,* 979 F.2d at 890. Consistent with the holdings of numerous other circuits,

the quick enactment of the 2012 Act to resolve the conflict as to the statute's

proper interpretation supports a determination that the 2012 Act clarified, rather

than changed, the law.

Another factor courts will consider is whether Congress in fact declared that

its intent in passing the challenged amendment was to clarify existing law. *Piamba*

*Cortes,* 177 F.3d at 1284. *See also ABKCO Music Inc.*, 217 F.3d at 690-691. Such

statements are relevant even if the text of the amendment does not itself state that

its purpose is clarification.[7] *Piamba Cortes*, 177 F.3d at 1287-1290 (relying on

negotiating history); *Liquilux*, 979 F.2d at 890 (relying on a state senate report).

> It has been established law since nearly the beginning of
> the republic … that congressional legislation that thus
> expresses the intent of an earlier statute must be accorded
> great weight ….

*Beverly Community Hosp.*, 132 F. 3d at 1265 (citation omitted).

---

[7] In some cases, courts have found an amendment to be clarifying based solely on
the prior existence of a conflict or ambiguity, even in the absence of further
statements from Congress regarding the intent of the amendment. *See, e.g.*,
*Callejas*, 750 F.2d at 730-731; *Marquette*, 686 F.2d at 614-616.

> In determining whether an amendment clarifies or changes an existing law, a court, of course, looks to statements of intent made by the legislature that enacted the amendment.

*Brown v. Thompson,* 374 F.3d at 259 (citations omitted).  Moreover, "[a]lthough the statements of one legislator made during debate may not be controlling," the remarks of the sponsors of the bill "'are clearly probative of a legislative judgment' and are therefore 'entitled to weight'" and "are an authoritative guide to the statute's construction."  *United States v. Maciel-Alcala,* 612 F.3d 1092, 1100 (9th Cir. 2010) (citations omitted).  This factor is clearly met here.  Not only did Congress identify its intent to correct an erroneous court decision by clarifying the law, that intent was expressly stated by the sponsors of the 2012 Act.[8]

The legislative history to the 2012 Act makes clear that, in section 1, Congress intended only to clarify the reach of the existing CVD law, not to substantively change it.  In the House debate on the bill, *see* JA 143-150, numerous legislators stressed that, in response to *GPX I*, the 2012 Act was intended to clarify that the CVD law had always covered NMEs to the extent that subsidies could be

---

[8]  Cases where courts have declined to give weight to later statements by members of Congress regarding the intent of an earlier law where those statements are not made in context of the enactment of an actual amendment making the relevant clarification to the earlier law are distinguishable.  Such statements, absent the enactment of an amendment to the prior law, are given little weight.  *See, e.g.*, *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117-118 and n.13 (1980).  Here, by contrast, the statements should be given weight, as they explain the purpose of a clarifying amendment that was enacted.

identified and measured. The legislators used a variety of terms to describe what Congress was doing—"reaffirm", "preserve", "restore", "confirm", "continue", "ensure"—but all of these terms underscore Congress's understanding that the bill was clarifying the existing scope and intent of the CVD law, not newly expanding its. For example, Representative Camp, Chairman of the House Ways and Means Committee ("HWMC") and the sponsor of the House bill, stated:

> This legislation <u>reaffirms</u> that our antisubsidy laws, or countervailing duty laws, apply to subsidies from China and other nonmarket countries, <u>and it overturns an erroneous decision</u> by the Federal circuit that the Department of Commerce does not have the authority to apply these countervailing duty rules to nonmarket economies.
>
>            ***
>
> That is why it is <u>vital that we preserve</u> this important tool and <u>ensure</u> that current countervailing duty orders and investigations from nonmarket economies <u>remain</u> in place and that this important tool is available in the future. [Emphasis added].

158 Cong. Rec. H1167 (March 6, 2012); JA 144. Representative Levin, Ranking Member of the HWMC and a co-sponsor of the House bill, echoed the chairman:

> This bill <u>restores</u> a key instrument for our Nation to hold China and other nations accountable.
>
>            ***
>
> This legislation ensures that tools <u>remain</u> available under U.S. trade law so that manufacturers can fight back against China's unfair trade subsidies.
>
>            ***
>
> Yet, in December, based on a deeply flawed assessment of congressional intent, the court of appeals for the Federal circuit ruled that Commerce, which administers

26

our countervailing duty laws, does not have the authority
to apply those laws to nonmarket economy countries like
China.

***

With this bill, we are making clear that the <u>Federal
circuit's decision was wrong</u> and that it cannot stand.
Commerce has <u>always had the authority</u> to apply
countervailing duties to nonmarket economies such as
China, and now it shall <u>continue</u> to have and exercise this
vitally important authority in the future. [Emphasis
added].

*Id.* Other legislators strongly expressed similar views:

[T]his legislation ensures the freedom of U.S. companies
and workers to compete in a market that is not distorted
by the Chinese Government. It <u>restores</u> free market
principles by allowing us to address China's unfair
subsidies. [Emphasis added].

158 Cong. Rec. H1168 (March 6, 2012) (statement of co-sponsor Mr. Brady); JA

145.

I certainly rise in support of this legislation, which
<u>confirms</u> that the Commerce Department can <u>continue</u> to
apply countervailing duties on subsidized imports from
countries with nonmarket economies such as China and
Vietnam. [Emphasis added].

*Id.* (statement of co-sponsor Mr. Neal).

This bill should not have been necessary. It <u>overturns a
faulty court decision</u> that claimed U.S. law prohibits the
Department of Commerce from applying countervailing
duties to nonmarket economies. [Emphasis added].

*Id.* (statement of co-sponsor Mr. Rohrabacker).

27

> This bill <u>restores</u> Commerce's ability to protect American jobs and companies from unfair, WTO-inconsistent practices, inconsistent trade practices perpetrated by nonmarket economies, mainly China and Vietnam.
>
> ***
>
> This has been a practice that is WTO compliant. We have used it for years, and now because of a recent Federal court ruling, it has been taken away.
>
> The bill … <u>restores current practices</u>, and it is the right thing to do for American businesses and workers. [Emphasis added].

*Id.* at H1168-69 (statement of co-sponsor Mr. Boustany); JA 145-146.

> This legislation will <u>once again allow</u> the application of our countervailing duty laws and the enforcement of existing orders to nonmarket economies like China. [Emphasis added].

*Id.* at H1169 (statement of co-sponsor Mr. Pascrell); JA 146.

> H.R. 4105 will <u>ensure</u> that the Department of Commerce can <u>continue</u> to apply countervailing duty and antisubsidy laws to nonmarket economies that are violating current law. [Emphasis added].

*Id.* (statement of co-sponsor Mrs. Ellmers).

> Passing this bill will <u>ensure</u> that the Commerce Department has the authority to apply tariffs on illegally subsidized goods from China and other nonmarket economies.
>
> ***
>
> H.R. 4105 will <u>ensure</u> that countervailing duties can <u>continue</u> to be applied to illegally subsidized goods from all countries, including China. [Emphasis added].

*Id.* at H1169-70 (statement of co-sponsor Mr. Michaud); JA 146-147.

> We must take action today and pass H.R. 4105 to overturn a flawed court ruling and to ensure that the Department of Commerce can continue to fight unfair subsidies that hurt American manufacturers and American workers. [Emphasis added].

*Id.* at H1170 (statement of co-sponsor Mr. Critz); JA 147.

> This is very important legislation we're doing here today because in December the Federal Court of Appeals wrongly determined that the Commerce Department does not have the authority to respond to illegal Chinese subsidies with countervailing duties.
>
> ***
>
> Tens of thousands of working Americans are counting on Congress today to reverse the court decision and preserve the ability of our country to respond to illegal trade. [Emphasis added].

*Id.* (statement of co-sponsor Ms. Slaughter).

> H.R. 4105, overturns the decision of the Court of Appeals for the Federal Circuit and preserves the validity of the countervailing duty proceedings against imports from China and Vietnam, beginning in 2006. This would ensure that the Department of Commerce can continue to apply countervailing duty law (CDV) to non-market economies (NME), such as China and Vietnam. [Emphasis added].

*Id.* at H1171 (statement of Ms. Jackson Lee); JA 148.

> H.R. 4105 [is] bipartisan legislation that confirms the Department of Commerce may continue to apply CVDs against unfairly subsidized imports from nonmarket economies like China. [Emphasis added].

*Id.* at H1173 (statement of co-sponsor Mr. Turner); JA 150.

All of these statements demonstrate that Congress intended section 1 of the 2012 Act to overturn *GPX I* and to clarify existing CVD law—*i.e.,* that the CVD law covered NMEs, and that it always had covered NMEs, to the extent that subsidies could be identified and measured—not to substantively change the CVD law.[9]

Congress's view of the existing authority to apply the CVD law to NMEs is consistent with the fact that Commerce and the predecessor administrator, Treasury, had in fact applied the CVD law to NMEs (in the early years a short-hand for Communist countries) before the cases leading to the *Georgetown Steel* decision in 1986. For example, Treasury imposed a countervailing duty order on cordage from Cuba in 1954. *Countervailing Duties; Cordage from Cuba*, T.D. 53534 (July 19, 1954). The order stayed in place after the Cuban Revolution, and it was not revoked until 1984. *Cordage from Cuba; Final Results of Administrative Review and Revocation of Countervailing Duty Order*, 49 Fed. Reg.

---

[9] That Congress's intent was clarification of the existing CVD law, not substantive change to the CVD law, is also demonstrated by the January 18, 2012, joint letter sent to Senator Max Baucus, Chairman of the Senate Finance Committee, by the Secretary of Commerce, John Bryson, and the U.S. Trade Representative, Ambassador Ron Kirk. *See* JA 136-137. They expressed need for the 2012 Act, writing: "the Administration stands ready to work with Congress to enact legislation <u>clarifying</u> that the CVD law can be applied to subsidized goods form non-market economies, that CVD proceedings Commerce has already initiated on products from non-market economies are to <u>continue</u>, and that CVD determinations Commerce has made with respect to such products are to <u>remain</u> in effect." [Emphasis added].

39888 (Dep't Comm. Oct. 11, 1984). The order was continually listed in federal regulations as remaining in effect even after Cuba became a Communist country in 1959. *See, e.g.*, 19 C.F.R. § 16.24(f) (1960); 19 C.F.R. § 16.24(f) (1970). Commerce also conducted administrative reviews of the order in the 1980s, and in both cases determined to continue the order. *Cordage from Cuba; Final Results of Administrative Review of Countervailing Duty Order*, 47 Fed. Reg. 33526 (Dep't Comm. Aug. 3, 1982); *Cordage from Cuba; Final Results of Administrative Review of Countervailing Duty Order*, 48 Fed. Reg. 39109 (Dep't Comm. Aug. 29, 1983).

In short, in order to correct *GPX I*, Congress enacted section 1 of the 2012 Act in which it reaffirmed and expressly declared that the CVD law provided, as it always had, Commerce with the authority to apply CVDs to NMEs whenever Commerce was able to identify and measure countervailable subsidies. Therefore, section 1 of the 2012 Act did not change substantive law; it merely clarified and confirmed the state of the existing law. As such, section 1 raises no retroactivity concerns under either the Ex Post Facto Clause nor the Due Process Clause.

31

The Court in *Wireking* neither discussed nor distinguished any of the cases cited above,[10] all of which directly conflict with the conclusion in *Wireking* that the 2012 Act changed the statute retroactively rather than clarified it. For all of these reasons, if *Wireking*'s statements in this regard are treated as precedential, this case presents a question of exceptional importance that should be heard en banc in order to avoid creating a significant conflict with the seven U.S. Courts of Appeals identified herein. F.R.A.P. 35(a) and (b); F.C.R. 35(a) and (b).

## II.   THE 2012 ACT IS A REMEDIAL STATUTE THAT ONLY AFFECTS ENTRIES UPON LIQUIDATION, AND IT IS THUS NOT "RETROACTIVE" IN THE CONSTITUTIONAL SENSE

Well-established case law holds that there can be no retroactive effects on imported merchandise until that merchandise is liquidated. This Court has no jurisdiction over entries that have been liquidated. "Under our case law, once liquidation occurs the trial court is powerless to order the assessment of duties at any different rate." *SKF USA, Inc. v. United States*, 512 F.3d 1326, 1328 (Fed. Cir. 2008) (citation omitted). Thus, as a matter of law, the 2012 Act cannot be "retroactive" as to any entries that could be impacted by this Court's decision. Hence, the 2012 Act cannot implicate constitutional concerns regarding

---

[10] The discussion in section I.B. above cites cases from seven U.S. Courts of Appeals, for the First, Third, Fourth, Seventh, Ninth, Eleventh, and D.C. Circuits. *See supra*.

retroactivity under either the Due Process or Ex Post Facto clauses of the

Constitution.

Like the AD and CVD laws generally, the 2012 Act has, as the Trade Court

and this Court found, a remedial purpose.  *See GPX III*, 893 F. Supp. 2d at 1310;

*Wireking*, 745 F.3d at 1206.  Remedial statutes do not raise constitutional

concerns.  The Supreme Court has specifically distinguished the Due Process

concerns raised by statutes imposing liability retroactively from the lack of similar

concerns raised by new remedial statutes being applied to pending cases.  In

*Landgraf*, the Court noted that because remedial statutes do not raise the same

concerns as retroactive statutes, "[w]e have sometimes said that new 'remedial'

statutes, like new 'procedural' ones, should presumptively apply to pending cases."

*Landgraf v. USI Film Products,* 511 U.S. 244, 285 n.37 (1994).  Moreover, the

Court said that a law that affects the propriety of prospective relief is not

retroactive, even if it derives from events prior to the law's enactment.

> Even absent specific legislative authorization, application
> of new statutes passed after the events in suit is
> unquestionably proper in many situations. When the
> intervening statute authorizes or affects the propriety of
> prospective relief, application of the new provision is not
> retroactive. Thus, in *American Steel Foundries v. Tri-
> City Central Trades Council*, 257 U.S. 184 (1921), we
> held that § 20 of the Clayton Act, enacted while the case
> was pending on appeal, governed the propriety of
> injunctive relief against labor picketing. In remanding the
> suit for application of the intervening statute, we
> observed that "relief by injunction operates *in futuro*,"

33

> and that the plaintiff had no "vested right" in the decree
> entered by the trial court. 257 U.S., at 201.

*Landgraf,* 511 U.S. at 273-74 (emphasis added) (citations omitted). CVDs are a

form of remedial relief and they are ultimately imposed on entries prospectively,

only after initial investigation, subsequent administrative review, and liquidation.

As such, the imposition of CVDs is not "retroactive" in the constitutional sense.

Indeed, in determining whether or not a new law acts retroactively upon

imported entries, this Court has held that liquidation is the "operative event" for

that determination. For example, in *Parkdale*, this Court considered whether

application of Commerce's new Reseller Policy to Parkdale's entries (which had

the effect of increasing Parkdale's dumping rate) was impermissibly retroactive.

This Court said no. Even though Parkdale's entries were entered before the new

policy took effect, they were liquidated afterward, and as liquidation was the

triggering or operative event for deciding whether application of a statute or

regulation to imports is impermissibly retroactive, the effect of applying the new

Reseller Policy to Parkdale's entries was prospective. This Court said:

> Accordingly, <u>in cases involving importers' challenges to
> the application of new laws based on retroactivity, we
> have looked at liquidation as the paramount relevant
> "past event."</u> *See, e.g., Travenol Labs., Inc. v. United
> States,* 118 F.3d 749, 753 (Fed.Cir.1997) (holding that
> liquidation of entries "is the triggering or operative
> event" for deciding whether application of a statute or
> regulation is impermissibly retroactive); *see also Syva
> Co. v. United States,* 681 F.Supp. 885, 890 (Ct. Int'l

34

> Trade 1988) (stating that "the statute merely prescribes the time for payment of duties once the entries are liquidated, and since liquidation, the operative event triggering the time for assessment of interest, occurred after the statute was enacted, there is no retroactive application which would deprive plaintiff of any vested substantive right") …. Accordingly, because … the <u>primary effect of the policy is prospective, *i.e.*, it applies to liquidations post-dating its adoption</u>, we conclude that its effect cannot properly be considered impermissibly retroactive.

*Parkdale International v. United States*, 475 F.3d 1375, 1379-80 (Fed. Cir. 2007) (emphasis added). As noted above, the Court has no jurisdiction over any entries that have already been liquidated. In addition, GPX's subject entries have not yet been liquidated. Because GPX's OTR Tire entries will be liquidated after the date of enactment of the 2012 Act, any impact of the 2012 Act will be a prospective, not a retrospective, application of the 2012 Act. Accordingly, no constitutional concerns about retroactivity arise.

### III. EVEN ASSUMING, ARGUENDO, THE 2012 ACT RETROACTIVELY CHANGED THE CVD LAW, IT DOES NOT VIOLATE THE DUE PROCESS CLAUSE

#### A. Rational-Basis Scrutiny Applies To Due Process Challenges

Even assuming, *arguendo,* that the 2012 Act retroactively changing the CVD law, GPX's arguments that the 2012 Act is impermissibly retroactive in violation of the Due Process Clause fail. The 2012 Act impaired no protected property interest of GPX and the statute readily satisfies the governing rationality standard for constitutionality.

"Due Process challenges will only succeed in the rarest of cases."
*Commonwealth Edison C*o. v. *United States,* 271 F.3d 1327, 1345 (Fed. Cir. 2001)
(en banc). "[L]egislative Acts adjusting the burdens and benefits of economic life
come to the Court with a presumption of constitutionality, and … the burden is on
one complaining of a due process violation to establish that the legislature has
acted in an arbitrary and irrational way." *Usery*, 428 U.S. at 15.

Not only are retroactive statutes not prohibited by the Due Process Clause, but
"the strong deference accorded legislation in the field of national economic policy is no
less applicable when that legislation is applied retroactively." *Pension Benefit Guar.
Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984). For purposes of a Due Process
challenge, all that is required to sustain legislation is "a legitimate legislative
purpose furthered by rational means." *Id.* Thus, the retroactive application of a
statute satisfies due process concerns "simply by showing that the retroactive
application of the legislation is itself justified by a rational legislative purpose."
*Id.*, 467 U.S. at 730.

### B. The 2012 Act Is Supported By A Legitimate Legislative Purpose

GPX argues that section 1(b) of the 2012 Act (*i.e.,* the November 20, 2006
effective date) retroactively applies Section 1(a) of the 2012 Act in violation of the
Due Process Clause. *See* GPX Brief at 21 *et seq.* GPX is wrong. The 2012 Act is

supported by a rational legislative purpose and GPX fails to carry its burden to show that the 2012 Act was "arbitrary and irrational."

Congress had a legitimate purpose in enacting the 2012 Act. Because Congress believed the *GPX I* decision misinterpreted the scope of the CVD law, Congress believed it was obliged to enact the 2012 Act to correct that decision and clarify that CVD law applied (and always had applied) to NMEs, like China, where subsidies could be identified and measured. Congress expressly applied this clarification back to the date of the first CVD proceeding in which Commerce could identify and measure subsidies in China and thus apply the CVD law to imports from China. *See generally* the *Georgetown Steel Memorandum*; JA 153-163.

Therefore, it was perfectly rational for Congress to clarify that Section 1(a) of the 2012 Act applied back to the time that Commerce initiated the proceeding in which the *Georgetown Steel Memorandum* was issued. In doing so, Congress overturned *GPX I* and restored, confirmed, validated, and clarified Commerce's carefully expressed position, as developed in the *Georgetown Steel Memorandum*, and thereby preserved Commerce's positional continuity from the time it made that determination. This is, manifestly, a rational basis for the 2012 Act. The Sixth Circuit reached a similar conclusion with regard to an amendment to the False Claims Act (FCA) when it said: "a rational legislative purpose may be identified

37

here, where Congress made clear that it sought to correct what it viewed as an erroneous interpretation of the FCA and passed the amendment "'to reflect the original intent of the law.'" *Sanders v. Allison Engine Co., Inc.*, 703 F.3d 930, 949 (6th Cir. 2012). So also, in *General Motors Corp. v. Romein,* 503 U.S. 181, 191 (1992), a statute was enacted with the purpose to "correct the unexpected results" of a Michigan Supreme Court opinion and to preserve the original intent of the law. The Supreme Court found the retroactive provision "was a rational means of meeting this legitimate objective." *Id.*

The Trade Court found that the 2012 Act does not violate due process because it was supported by a rational purpose.

> [T]he government asserts that Congress acted based on the legitimate state interest of protecting U.S. industry from unfair trade practices while also ensuring the finality of existing CVD orders …. At least twenty-four orders were entered based on what later proved to be a contentious and perhaps faulty interpretation of the statute by Commerce. The government's assertions appear to be supported by the minimal legislative history and the letter from the administration that spurred Congress into action …. The effective date itself for Section 1 likely amounts to a deferral to Commerce's expertise in determining when Commerce first might have been able to identify and measure subsidies in the PRC …. [T]hese legislative bases are legitimate and provide the minimal rationale needed to prevent GPX from overcoming the presumption of constitutionality afforded to laws in this field.

*GPX III*, 893 F. Supp. 2d at 1315. GPX has failed to demonstrate any error in this reasoning.

Although GPX argues to the contrary (GPX Brief at 30-37), the enactment of a curative statute to ratify past agency action is another rational basis supporting the retroactive application of a statute. That is, Congress may enact a law to retroactively legalize and ratify an administrative agency's past actions when Congress possessed the power to have authorized such agency action in the first instance. For example, in 1898, when the Philippines were under U.S. military control, the President issued an order providing for the collection of tariffs on imports into the Philippines. *United States v. Heinszen & Co.,* 206 U.S. 370, 378 (1907). The U.S. ratified a peace treaty with Spain in 1899, but the tariffs continued. Later, it was judicially determined that, between 1899 and 1902 (when Congress approved and continued the tariffs), the President lacked the power to authorize the tariffs. *Heinszen,* 206 U.S. at 379. Subsequently, in 1906, Congress passed a law that expressly "legalized and ratified" the tariffs collected between 1899 and 1902, "as if the same had by prior act of Congress been specifically authorized and directed."[11] *Heinszen,* 206 U.S. at 381. The Supreme Court upheld the statute against a claim that it violated the Due Process Clause, even though

---

[11] We note that the time that lapsed between the passage of the beginning of the initially unauthorized duty collection and the curative legislation in *Heinszen* was seven years (1899 to 1906). In this case, preliminary duty liability was not imposed until December 2007 and the curative legislation passed in March of 2012, four years and three months later.

tariff refund cases were pending, because Congress could have imposed the duties

previously and merely ratified the President's prior actions.

> [W]hen the duties were illegally exacted in the name of
> the United States[,] Congress possessed the power to
> have authorized their imposition in the mode in which
> they were enforced, and hence from the very moment of
> collection a right in Congress to ratify the transaction, if
> it saw fit to do so, was engendered.

*Heinszen,* 206 U.S. at 386. Here, to the extent Commerce is considered to have

lacked the authority to apply the CVD law to imports from China prior to the 2012

Act, Congress had the power to authorize such application. As in *Heinszen,*

Congress enacted a curative law – the 2012 Act – and thereby legalized and

ratified Commerce's past administrative action without infringing due process.

### C.    GPX Fails To Demonstrate Any Protected Interest

The Due Process Clause of the Fifth Amendment states that "[n]o person shall be

... deprived of life, liberty, or property, without due process of law." Only after finding

a deprivation of a protected interest is it relevant whether the statute provides adequate

due process protections. *See American Mfrs. Mut. Ins. Co.* v. *Sullivan,* 526 U.S. 40, 59

(1999). GPX fails to identify any protected interest in life, liberty, or property of which

it has been deprived by the 2012 Act. When the Act was enacted, GPX had no vested

rights under existing law nor settled expectations in static trade laws. The case law is

clear that "'legislation readjusting rights and burdens is not unlawful solely because it

upsets otherwise settled expectations." *Pension Benefit Guar. Corp.,* 467 U.S. at 729,

quoting *Usery,* 428 U.S. at 16; *see also United States v. Carlton,* 512 U.S. 26, 33 (1994) ("Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code."); *N.Y. Cent. R.R. Co. v. White,* 243 U.S. 188, 198 (1917) ("No person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit.").

Justice Cardozo said long ago in the context of trade and customs law: "No one has a legal right to the maintenance of an existing rate or duty." *Norwegian Nitrogen Products Co.* v. *United States,* 288 U.S. 294, 318 (1933). This Court echoed the point in *A Classic Time v. United States,* 123 F.3d 1475, 1476 (Fed. Cir. 1997): "the Constitution does not provide a right to import merchandise under a particular classification or rate of duty" (citing *Norwegian Nitrogen*, 288 U.S. at 318). Indeed, this Court has stated that "[n]o vested right to a particular rate of duty is acquired at the time of importation." *North American Foreign Trading Corp. v. United States,* 783 F.2d 1031, 1032 (Fed. Cir. 1986), citing *Norwegian Nitrogen,* 288 U.S. at 318 (emphasis added). This so because importers "import goods with the knowledge that changes may occur to duty margins until liquidation of subject entries." *Parkdale*, 475 F.3d at 1379; *see also Travenol Laboratories, Inc. v. United States,* 118 F.3d 749, 753 (Fed. Cir. 1997) ("Until [liquidation], both Customs and the importer are on notice that changes may occur."). Thus, there can

41

be no vested right in a particular customs duty rate, antidumping duty rate, or

countervailing duty rate, because, as the Trade Court has observed:

> Given the retrospective nature of Commerce's
> administrative reviews, an exporter cannot expect to
> predict exactly its potential antidumping duty liability at
> the time of import into the United States.

*Bethlehem Steel Corp. v. United States,* 27 F. Supp. 2d 201, 207 (Ct. Int'l Trade

1998). "The uncertainty of knowing the final amount of duties due at the time of

entry is simply an inherent part of importing merchandise into the United States."

*Id.,* quoting *D & L Supply Co. v. United States,* 841 F. Supp. 1312, 1315 (Ct. Int'l

Trade 1993).

The Trade Court correctly found that GPX failed to "articulate a vested right

with which the [2012 Act] interferes." *GPX III*, 893 F. Supp. 2d at 1313. The Trade

Court noted that "customs duties are to an extent unique from other government

assessments in that there is no right to import, and where unfair trade remedies

apply, those with goods that may be imported rarely can predict with accuracy

what the duty will be." *Id.,* citing *Norwegian Nitrogen, supra.* Thus, the Trade

Court concluded: "Because, as to trade remedies, neither exporters nor importers

have any real certainty as to the final rate on the imported product at the time of

entry, they cannot demonstrate that a property right in a particular duty rate has

vested, with which Congress may not interfere." *Id.* at 1314.

Thus, GPX had no vested right to any particular CVD rate, or to no rate.

Nor, at the same time, could GPX have had an "objectively reasonable settled

expectation" that CVD law would not apply to its subject entries. As this Court

said in *Parkdale*:

> [A]n importer's duty is not fixed until liquidation.
> Therefore, despite the fact that Parkdale enjoyed
> liquidation at Stelco's dumping margin for several years,
> it, nevertheless, could not have an objectively reasonable
> settled expectation that it would not, at some point, be
> subjected to a different margin.

*Parkdale*, 745 F.3d at 1380. This observation equally applies to GPX here.

Accordingly, this Court should also conclude GPX had no constitutional

right to escape CVD assessments, on an allegedly "retroactive" basis, to counteract

unfair subsidization.

## D. GPX's Other Due Process Arguments Fail

GPX argues that the 2012 Act is <u>tax</u> legislation, not social and economic

regulation, as if that is somehow a relevant distinction. *See, e.g.,* GPX Brief at 21

*et seq*. Ascribing the label of "tax" law to the 2012 Act, however, does not change

the constitutional standards involved—rational basis still applies. The Supreme

Court explained in *Carlton,* a case involving a retroactive tax:

> This Court repeatedly has upheld retroactive tax
> legislation against a due process challenge …. Some of
> its decisions have stated that the validity of a retroactive
> tax provision under the Due Process Clause depends
> upon whether "retroactive application is so harsh and

43

> oppressive as to transgress the constitutional limitation."
> …. The "harsh and oppressive" formulation, however,
> "does not differ from prohibition against arbitrary and
> irrational legislation" that applies generally to enactments
> in the sphere of economic policy …. The due process
> standard to be applied to tax statutes with retroactive
> effect, therefore, is the same as that generally applicable
> to retroactive economic legislation.

*Carlton,* 512 U.S. at 30 (citation omitted). Retroactive tax legislation, like

retroactive economic legislation, is permissible as long as it is "supported by a

legitimate legislative purpose furthered by rational means." *Carlton,* 512 U.S. at

30-31 (citation omitted).

Moreover, ADs and CVDs are quintessential economic regulation, since

both counteract unfair practices that injure U.S. industries and workers. At the

same time, neither exists to raise revenue as does a typical tax statute. This Court,

in *SKF USA, Inc.* v. *United States,* 556 F.3d 1337, 1360 (Fed. Cir. 2009), applied

the rational basis scrutiny applicable to social and economic legislation to the

"Byrd Amendment," which like the 2012 Act, us part of the trade remedy laws.

GPX further argues that the 2012 Act "fails the Supreme Court's notice and

consequence analysis," *i.e.*, failed to provide adequate notice, by reason of its

alleged retroactive application. GPX Brief at 27. However, in a practical

economic sense, GPX cannot claim to have been surprised by Commerce's

application of CVD law to GPX's imports. Commerce published its preliminary

CVD determination on December 17, 2007.[12]  On that date, Commerce announced

that it was prospectively suspending liquidation of GPX entries of subject goods,

*as per* 19 U.S.C. § 1671b(d)(1)(B) and (d)(2).  *See* 72 Fed. Reg. at 71,376.

Therefore, GPX entries prior to that date were not even potentially subject to any

CVD assessments.  Even well in advance of that date, GPX was aware that its

entries could be subject to CVDs.  On March 29, 2007, Commerce announced that

it had determined that it could identify and measure subsidies in China, and thus

apply CVD law to China in the *Georgetown Steel Memorandum*.  Commerce

issued its first affirmative final CVD determination on goods from China in

October of 2007.  *Coated Free Sheet Paper from the People's Republic of China:*

*Final Affirmative Countervailing Duty Determination*, 72 Fed. Reg. 60645 (Dep't

Commerce Oct. 25, 2007).  GPX had ample time thereafter to adjust its practices

and pricing behavior to Commerce's decision.[13]  Thus, GPX had adequate notice

---

[12] *Certain New Pneumatic Off-the-Road Tires from the People's Republic of China*, 72 Fed. Reg. 71360 (Dep't Comm. Dec. 17, 2007) (prelim. affirm. CVD determ).

[13] In fact, Commerce announced publicly that it was considering applying the CVD law to China on December 15, 2006.  *See Application of the Countervailing Duty Law to Imports from The People's Republic of China; Request for Comment*, 71 Fed. Reg. 75,507 (Dep't Comm. Dec. 15, 2006). Therefore, GPX was on notice six months before the OTR Tires petition was filed in June of 2007 and a full year before the preliminary determination.

(at least nine months prior to the preliminary determination) that its subject imports entered after December 17, 2007, were potentially subject to the CVD law.

This Court rejected a similar fair-notice contention in *Parkdale*. In that case, Commerce first proposed a change to its Reseller Policy in a 1998 Federal Register notice, and then sought additional public comments in 2002, to which Parkdale responded. Commerce adopted the policy in May 2003, and applied it in Parkdale's administrative review for the period August 1, 2002 to July 31, 2003. This Court said: "since 1998, Parkdale was on notice that Commerce might adopt the *Reseller Policy*. In view of the additional notice Commerce provided in 2002 and the comments Parkdale submitted in response, it undoubtedly had fair notice of the change." *Parkdale,* 745 F.3d at 1380. The Trade Court rejected GPX's lack-of-notice claim. It found that GPX "knew at the time of entry" of its subject imports "that China's status was in a state of flux, and they should have known that their imports might be subject to increased remedial duties." *GPX III*, 893 F. Supp. 2d at 1314. Thus, the Trade Court concluded, GPX "cannot claim that they lacked notice that China's status as a traditional NME was at least unsettled by the time Commerce issued its preliminary determination in [the OTR Tires] investigation and their entries were subjected to trade remedies." *Id.*

In sum, GPX's Due Process challenge fails, even if one assumes *arguendo* that the 2012 statute is retroactive, because GPX has not negated the rational basis

of the 2012 Act and has failed to establish any protected interest infringed by the 2012 Act.

## IV. EVEN ASSUMING, *ARGUENDO*, THE 2012 ACT RETROACTIVELY CHANGED THE CVD LAW, IT DOES NOT VIOLATE THE EX POST FACTO CLAUSE

GPX argues that the 2012 Act retroactively penalized importers and exporters from NMEs by allowing countervailing duties to be applied to entries made before the statute's enactment. *See* GPX Brief at 44 *et seq.* In support of this argument, GPX also claims that the remedies are disproportionate to the harm suffered, because both antidumping and countervailing duties have been imposed on the same subject entries without adjusting for so-called "double counting." *Id.* at 49. GPX claims that this transformed the 2012 Act into a punitive law that violates the Ex Post Facto Clause of the Constitution. *Id.* GPX's argument is meritless. The 2012 Act does not meet the definition of an *ex post facto* law as construed by the courts. It is not penal, punitive, or criminal in nature. Rather, the 2012 Act, even if considered retroactive, is, like the AD and CVD law generally, a remedial statute. Moreover, this Court held in *Wireking* that the 2012 Act does not violate the Ex Post Facto Clause, even if it is incorrectly treated as a retroactive change in the law.[14] *Wireking*, 745 F.3d at 1207.

---

[14] *Wireking*'s holding that the law does not violate the Ex Post Facto Clause is binding precedent and should be followed in this case. The discussion of *Wireking* in Section I of this brief is limited to addressing the problematic

## A. The 2012 Act Is Civil, Remedial Legislation, Not Penal, Punitive, Or Criminal In Nature

Statutes challenged on *ex post facto* grounds under Article I, Section 9, Clause 3 of the Constitution are presumed constitutional. *See, e.g., Flemming* v. *Nestor,* 363 U.S. 603, 617 (1960). While courts analyze an *ex post facto* claims *de novo,* the focus is merely on whether the statute is in fact an *ex post facto* law in the constitutional sense of the term. *See, e.g., Calder* v. *Bull,* 3 U.S. 386, 390-91 (1798) (defining *ex post facto* laws for purposes of the Constitution); *NationsBank of Texas,* 269 F.3d at 1336 (citing and following *Calder* v. *Bull*).

The constitutional prohibition against *ex post facto* laws applies only to criminal, penal or punitive statutes; it does not apply to remedial legislation. The Supreme Court established the rule long ago in *Calder v. Bull, supra.* The Supreme Court followed the decision in *Bouie* v. *City of Columbia,* 378 U.S. 347, 353 (1964), and this Court followed it as well in *NationsBank of Texas,* 269 F.3d at 1336.

As this Court has noted, the AD and CVD statutes are remedial, not punitive or criminal in nature. For example, in *Chaparral Steel Company v. United States,* 901 F.2d 1097, 1103-04 (Fed. Cir. 1990), the Court said:

---

statements in *Wireking* regarding retroactivity, which were not necessary to the Court's correct holding regarding the Ex Post Facto Clause.

Even before the U.S. antidumping law was modified in
1979 to conform with the GATT requirements, it was
clear that duties were intended to be solely remedial. *See
Imbert Imports, Inc. v. United States*, 331 F.Supp. 1400,
1406 (Cust. Ct. 1971), *aff'd* 475 F.2d 1189 (CCPA 1973)
(interpreting Antidumping Act of 1921 as "mandat[ing]
the taking of prescribed <u>remedial</u> action in the event of
dumping and <u>resultant injury</u> to an industry .... ")
(emphasis added); S. Rep. No. 1221, 92d Cong., 2d Sess.
8 (1972) ("[C]ountervailing duties are <u>not</u>, nor were they
ever intended to be, <u>penal</u> in nature; they are remedial in
nature inasmuch as they operate to offset the effect of
subsidies afforded foreign merchandise.") (emphasis
added); *cf.* S. Rep. No. 1298, 93d Cong., 2d Sess. 123,
*reprinted in* 1974 U.S. Code Cong. & Admin. News
7186, 7267 ("[N]o compensation or retaliation</u> is in
order" under the antidumping or countervailing duty
scheme.) (emphasis added). [Brackets and emphasis in
original.]

Similarly, in *NTN Bearing Corp.* v. *United States,* 74 F.3d 1204, 1208 (Fed. Cir.

1995), this Court said: "the antidumping laws are remedial not punitive."

This Court said in *Wireking* that the 2012 Act was civil in nature and

therefore outside the traditional "criminal" scope of *ex post facto* analysis:

Because the Ex Post Facto Clause prohibits retroactive
punishment, this constitutional provision is directed at
statutes that "'retroactively alter the definition of crimes
or increase the punishment for criminal acts.'" …. There
is no dispute that the Tariff Act and the 2012 amendment
are civil in nature. Thus, they fall outside the scope of the
Supreme Court's traditional ex post facto analysis.

*Wireking*, 745 F.3d at 1202 (citations omitted).  Moreover, this Court found the

2012 Act had a "curative purpose," not a punitive purpose.  *Id.* at 1203.  The Court

said that "remedial intent drove Congress to enact the 2012 law." *Id.*, citing the House floor debate.

Therefore, under traditional constitutional analysis, the 2012 Act cannot be considered an *ex post facto* law. CVDs are not punishments; they merely neutralize unfair subsidies that injure U.S. industries and workers.

### B.     GPX Fails To Show That The 2012 Act Meets The *Smith* Standard For A Punitive Civil Law

This Court has noted that, "in rare circumstances, the Supreme Court has held that a civil law violates the Ex Post Facto Clause because the law was punitive." *Wireking,* 745 F.3d at 1202 (noting, however, that the Supreme Court has found a civil law to violate the Ex Post Facto Clause on only three occasions, the last time being in 1878). This is a "narrow exception to the general rule" that the Ex Post Facto Clause only applies to laws affecting criminal penalties. *Id.* GPX fails to show that the 2012 Act falls within this narrow exception.[15]

This Court has said that the "Supreme Court's standard for determining when a civil law can be deemed punitive" is most clearly spelled out in the Court's

---

[15] GPX argues that the 2012 Act is punitive, basing its analysis on three factors set out in *Huaiyin Foreign Trade Corp. v. United States,* 322 F.3d 1369, 1380 (Fed. Cir. 2003). *See* GPX Brief at 45-50. The appellant in *Wireking* made the same argument that GPX presents here. This Court, however, said that the appropriate test of whether a civil statute is punitive is a seven-factor test set out by the Supreme Court in *Smith v. Doe,* 538 U.S. 84 (2003). *See Wireking,* 745 F.3d at 1204. The Court noted that the "component parts of [the] *Huaiyin* test largely overlap aspects of the [*Smith*] seven part test." *Id.* at 1205.

decision in *Smith v. Doe,* 538 U.S. 84 (2003), a "standard [which] is exacting and difficult to satisfy." *Wireking,* 745 F.3d at 1202-03. In *Wireking*, the Court first determined whether the Congress intended the 2012 Act to establish "civil" proceedings, and, based on its finding that the 2012 Act was remedial in purpose, the Court found that the 2012 Act was part of "the civil regulatory scheme." *Id*. at 1204.

Following the path of the *Smith* analysis, the Court then asked whether the 2012 Act is "so punitive either in purpose or effect as to negate [Congress's] intention to deem it civil?" *Id.*, quoting *Smith,* 538 U.S. at 92. To guide this inquiry, which looks at the law's objectives and effects, the Supreme Court has articulated seven factors:

> (1) whether the sanction "has been regarded in our history and traditions as a punishment"; (2) whether it "imposes an affirmative disability or restraint"; (3) whether it "promotes the traditional aims of punishment"; (4) whether it "has a rational connection to a nonpunitive purpose"; (5) whether it "is excessive with respect to this purpose"; (6) "whether the regulation comes into play only on a finding of *scienter*"; and (7) "whether the behavior to which it applies is already a crime."

*Id.*, quoting *Smith,* 538 U.S. at 97. Further, only the "clearest proof" can overcome legislative intent to "transform what has been denominated a civil remedy into a criminal penalty." *Id.*, quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997).

51

Applying the *Smith* factors to the 2012 Act, the Court concluded that "under the *Smith* analysis, we find that the 2012 law is not punitive and does not violate the Ex Post Facto Clause." *Id.* at 1207. With respect to particular factors, the Court found that factors 1-3 and 6-7 "do not support a finding that the 2012 law is punitive." *Id.* at 1205. The Court made the following observations:

- Under factor 1, CVDs have not been regarded, historically or traditionally, as a punishment.

- Under factor 2, the 2012 Act is not an affirmative disability or restraint.

- Under factor 3, the 2012 Act does not promote the traditional aims of punishment.

- Factors 6 and 7 are not applicable to the 2012 Act.

Thus, the Court found, only factors 4 and 5 "possibly support" the position that the 2012 Act is punitive, but, on examination, the Court found that they do not.

Factor 4—whether the 2012 Act has rational connection to a nonpunitive purpose—is the most relevant factor. As noted above, the AD and CVD laws are "remedial in nature" (*id.* at 1205) and the "primary purpose of antidumping and countervailing duties generally is <u>remedial</u>, not punitive." *Id.* at 1206 (emphasis in original). So also the 2012 Act "does not stray from the remedial nature of trade duties generally" because its specific purpose is to remedy harm from unfair trade

practices. *Id.* "Thus, like antidumping and countervailing duties generally, the specific purpose of the 2012 amendment is remedial, not punitive." *Id.*

Finally, as to factor 5—whether the 2012 Act is excessive with respect to its remedial purpose because it allows the possibility of double counting AD and CVD remedies—the Court said the 2012 Act was not excessive.[16] The Court

---

[16] Section 2 of the 2012 Act, which permits adjustments for double counting, is prospective only because the change was made to implement an adverse WTO decision. *GPX II*, 678 F.3d at 1311. For many years U.S. law only explicitly authorized adjustments to AD margins to account for the simultaneous application of CVD duties where the CVD duties addressed export subsidies. 19 U.S.C. § 1677a(c)(1)(C). There is no such authorization for CVD duties that address domestic subsidies. This reflected the GATT and WTO Agreements, which also only prohibit the simultaneous collection and AD and CVD duties to compensate for the same situation of dumping or "export subsidization." General Agreement on Tariffs and Trade 1994 (GATT 1994), 1867 U.N.T.S. 187, Art. VI:5. Consistent with the statute and international obligations, Commerce only adjusted AD margins to account for CVD duties applied to export subsidies, not domestic subsidies. This practice applied regardless of whether the merchandise at issue was exported from an NME or a market economy. *Certain New Pneumatic Off-The-Road Tires from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Partial Affirmative Determination of Critical Circumstances*, 73 Fed. Reg. 40485 (Dep't Comm. July 15, 2008) and accompanying Issues and Decision Memorandum at Comment 2; JA 164-171. It was only after an adverse WTO ruling that Commerce or Congress viewed it to be necessary to investigate whether there may be "double counting" with regard to CVD duties on domestic subsidies.

The statute implements this change prospectively. Such implementation is normally undertaken under sections 123 and 129 of the Uruguay Round Agreements Act, with implementation required to be prospective only. 19 U.S.C. §§ 3533(g)(2); 3538(c). The Trade Court explained that prospective implementation of section 2 appears "to be rationally related to the government's interests in conserving limited resources and also consistent with

explained: "Although the 2012 amendment may permit some retroactive double counting, this small 'imprecision' does not vitiate the law's remedial effect generally" or "render it punitive" because the "predominant effect of the new law is remedial." *Id.* at 1207 (citation omitted).

Moreover, the Court found that the argument that double counting is excessive is "particularly problematic because double counting is hardly a simple calculation" and "it is not entirely clear that such double counting has even occurred." *Id.* Thus, the Court said: "The existence of an ex post facto violation cannot depend on the existence of a complex and unclear calculation designed to determine whether the law goes beyond what is necessary to remedy the injury incurred in a particular case." *Id.*

All of these observations and conclusions by the Court in *Wireking* are equally if not more applicable in this case, given that GPX here presents the exact same ex post facto argument as that presented by the *Wireking* plaintiff. GPX, like the plaintiff in Wireking, "has not shown, let alone by the clearest proof, that the absence of a retrospective double-counting provision negates the law's predominantly remedial impact." *Id.* Indeed, GPX's double counting claim is even less persuasive here, as Commerce has already provided such adjustments

---

the general statutory approach of prospective implementation of changes based on an adverse ruling in a WTO dispute." *GPX III*, 893 F. Supp. 2d at 1317.

under the OTR Tires AD order, where warranted, pursuant to an adverse WTO ruling and resulting Section 129 determination. *Implementation of Determinations Under Section 129 of the Uruguay Round Agreements Act: Certain New Pneumatic Off-the-Road Tires; Circular Welded Carbon Quality Steel Pipe; Laminated Woven Sacks; and Light-Walled Rectangular Pipe and Tube From the People's Republic of China*, 77 Fed. Reg. 52683, 52686 (Dep't Comm. Aug. 30, 2012). Accordingly, the Court should find, as it did in *Wireking*, that the 2012 Act "is not punitive and does not violate the Ex Post Facto Clause." *Wireking*, 745 F.3d at 1207.

## V.   EVEN IF THIS COURT SHOULD FIND THE 2012 ACT IMPERMISSIBLY RETROACTIVE, IT SHOULD NOT TERMINATE THE SUBJECT CVD ORDER.

GPX argues that, assuming that this Court finds that section 1(b) of the 2012 Act is unconstitutional because it is impermissibly retroactive, this Court should sever section 1(b) from the 2012 Act and terminate the CVD Order. *See* GPX Brief at 60-61. Moreover, GPX mistakenly contends that such a result would effectively recall to life the *GPX I* decision which Congress expressly overruled. *Id.* GPX's arguments are without merit.

As reviewed above, the 2012 Act does not violate or even implicate any constitutional provision, so there is no constitutional basis to terminate the CVD Order. Therefore, GPX's argument that the CVD order should terminate is irrelevant.

At the very most, if the 2012 Act were to be found unconstitutional, the original issues in the OTR Tires investigation regarding whether Commerce lawfully applied the existing CVD law—*i.e.,* the law prior to the 2012 Act—would arise again, and normal deferential standards of review would apply. For the reasons explained in section I.A, above, the law prior to the 2012 Act did not prohibit the application of the CVD law to NMEs, as GPX claims, because *GPX I* never became a final decision and has no, and never had any, binding legal effect. In addition, even if this Court were to revisit the issues decided in *GPX I*, it must address certain issues that go to the validity of the reasoning in *GPX I*. Both the United States and Titan presented compelling arguments on rehearing that this Court in *GPX I* misapprehended the law when it concluded that Congress ratified the view that CVD law does not apply to NMEs. But this Court never reached those arguments because Congress enacted the 2012 Act after the parties filed their rehearing petitions, and this Court recognized that the 2012 Act required that it set *GPX I* aside.

In addition, this Court has already stated that the new law makes clear that the Trade Court's original theory, that Commerce's failure to adjust for double counting under the prior law was unreasonable, was incorrect. *GPX II*, 678 F.3d at 1312 n.3. Thus, that construction can also not arise again as the proper result in the event the 2012 Act is found unconstitutional. In the event the 2012 Act is found

unconstitutional in any aspect, it would be necessary for this Court to remand the matter to the Trade Court to consider all substantive issues afresh.

## CONCLUSION

For the foregoing reasons, the Court should reject all of GPX's constitutional claims and affirm the Trade Court's holdings that the 2012 Act is constitutional. This Court should rule that the statements in *Wireking* regarding the retroactivity of the 2012 Act were *dicta*, and that the 2012 Act merely clarified, rather than changed, existing law, thus implicating no constitutional concerns. In the alternative, if the *Wireking* statements regarding retroactivity are viewed as precedential, we respectfully request that the Court hear the issue en banc to overturn those statements and find that the 2012 Act is in fact a clarification without constitutional implications.

Moreover, this Court should find that the 2012 Act is rationally related to legitimate government interests and thus does not violate the Due Process Clause of the U.S. Constitution, and that the 2012 Act does not violate the Ex Post Facto Clause of the U.S. Constitution because it is remedial, not penal, in nature.

Respectfully submitted,

*/s/ Elizabeth J. Drake*

Terence P. Stewart
Elizabeth J. Drake
Patrick J. McDonough
STEWART AND STEWART
2100 M Street, NW, Suite 200
Washington, DC 20037
(202) 785-4185
edrake@stewartlaw.com

*Attorneys for Defendants-Appellees Titan Tire Corporation* and *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC.*

July 14, 2014

Form 30

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

July 14, 2014

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| | |
|---|---|
| Elizabeth J. Drake | /s/ Elizabeth J. Drake |
| Name of Counsel | Signature of Counsel |

Law Firm        Stewart and Stewart

Address         2100 M Street, NW

City, State, ZIP    Washington, DC 20037

Telephone Number    (202) 785-4185

FAX Number      (202) 466-1286

E-mail Address    edrake@stewartlaw.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

Form 19

FORM 19.  Certificate of Compliance With Rule 32(a)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [          13,948          ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐    The brief uses a monospaced typeface and contains [                    ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using
[                    *Microsoft Word*                    ] in
[               *Font 14 Times New Roman*               ], or

☐    The brief has been prepared in a monospaced typeface using
[                                        ] with [
[                                        ].

_____
(Signature of Attorney)

Elizabeth J. Drake
_____
(Name of Attorney)

Counsel for Defendants-Appellees Titan Tire and USW
_____
(State whether representing appellant, appellee, etc.)

July 14, 2014
_____
(Date)

Reset Fields

142